**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-25115-Civ-WILLIAMS/TORRES

DOROTHY JACKSON,

      Plaintiff,

v.

NCL AMERICA, LLC,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on NCL America, LLC's ("Defendant" or "NCL") motion to dismiss Dorothy Jackson's ("Plaintiff" or "Ms. Jackson") complaint. [D.E. 9]. Plaintiff responded to Defendant's motion on February 18, 2020 [D.E. 11] to which Defendant replied on February 25, 2020. [D.E. 14]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion to dismiss should be **GRANTED** without prejudice.[1]

_____

[1]     On April 22, 2020, the Honorable Kathleen Williams referred Defendant's motion to the undersigned Magistrate Judge for disposition. [D.E. 23].

## I.  BACKGROUND

On December 11, 2019, Plaintiff filed a complaint against Defendant under general maritime law because she suffered injuries when she slipped and fell on an onion peel as a crewmember onboard Defendant's vessel.  Plaintiff alleges that this is the second time that she seeks maintenance and cure benefits against NCL because she filed a prior lawsuit in *Dorothy Jackson v. NCL America, LLC,* Civil Case No. 1:14-cv-23460-KMW.  The prior case included claims of Jones Act negligence, unseaworthiness, maintenance, and cure.  After a bench trial, the district court entered judgment for Plaintiff on her cure claim but it limited her recovery to the rate that Defendant would have paid for her back surgery had a physician in its network performed the surgery.[2]  The district court ruled in Defendant's favor on the other three claims.

Both parties filed cross-appeals and the Eleventh Circuit affirmed the district court in all respects on April 10, 2018.[3]  Notwithstanding the prior lawsuit, Plaintiff claims that she has the right to bring successive lawsuits to collect maintenance and cure payments because, since the time of the prior case, Defendant has either discontinued or refused Plaintiff's demand to reinstate her benefits.  Plaintiff

---

[2]     From 2013 to 2016, Plaintiff had two right knee surgeries, a left knee surgery, a right shoulder surgery, and a back surgery.  A physician, that Plaintiff selected, performed the surgeries but he was not within Defendant's network.  Defendant reimbursed Plaintiff at its network rate for the three knee surgeries and the shoulder surgery, as well as her office visits and physical therapy.  Defendant refused to reimburse Plaintiff for the back surgery.

[3]     The district court did not issue a written opinion on its findings of fact and conclusions of law.  Instead, the court delivered those findings orally at a hearing on November 21, 2016.  [D.E. 9-1].

alleges that she is no longer at her maximum medical improvement[4] ("MMI") and that Defendant's duty to provide maintenance and cure benefits must continue. Because Defendant has refused to comply with its obligations, Plaintiff seeks compensatory damages, fees, costs, and punitive damages.

## II.   APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not

---

[4]     MMI is reached "where it appears that the seaman's condition is incurable or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition[.]" *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979).

required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III. ANALYSIS

Defendant argues that Plaintiff's complaint should be dismissed under the doctrine of *res judicata*. "Under *res judicata*, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) (citing *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). *Res judicata* bars a claim if all four of the following elements are met[5]: "'(1)

---

[5]     When a federal district court applies *res judicata* to a prior state-court decision, it applies the *res judicata* principles of the law of that state. *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985).   However, we apply federal law in this case, because "federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." *E.E.O.C. v. Pemco Aeroplex, Inc.,* 383 F.3d 1280, 1285 (11th Cir. 2004) (quotation omitted).

there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.'" *Tuscano v. Evening Journal Ass'n*, 179 F. App'x 621, 625 (11th Cir. 2006) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)).

"The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case.  In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (citation and quotation marks omitted).  "It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same claim or cause of action for purposes of *res judicata*." *Id.* (citation and quotation marks omitted).

Generally, *res judicata* "is an affirmative defense that should be raised under Rule 8(c)," but "a party may raise a *res judicata* defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982); *see also Solis v. Glob. Acceptance Credit Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015) (same).  In making this determination, district courts may consider documents attached to the complaint and take judicial notice of prior proceedings in both state and federal courts. *See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d

805, 811–12 & n.4 (11th Cir. 2015).   However, when a district court considers matters outside the pleadings, the Rule 12(b)(6) motion converts into a Rule 56 motion for summary judgment.  *See Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1266 n.11 (11th Cir. 1997).  The court must then notify the parties and give them ten days to submit "any relevant evidence and arguments in support or opposition to the merits."  *Id.* (citation omitted).  An exception to this requirement is when the "parties are aware of the court's intent to consider matters outside the record and have presented all the materials and arguments they would have if proper notice had been given[.]"  *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir. 1986) (citing *Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599, 605 (11th Cir. 1985)).

Defendant contends that Plaintiff's maintenance and cure claim is barred under *res judicata* because each element identified above has been met.  Defendant claims that the first element is satisfied because it is based, in part, on Plaintiff's complaint in the prior case where Plaintiff alleged that Defendant failed to meet its maintenance and cure obligations.  Defendant directs the Court's attention to the trial proceedings in the prior case where Defendant was liable for Plaintiff's expenses related to a back surgery.  Defendant asserts that this was its final obligation because Plaintiff had reached her MMI for the injuries sustained prior to trial. Defendant further states that the second element of *res judicata* is met because, in the prior case, the district court entered a final judgment after a bench trial and that this constitutes a decision from a court of competent jurisdiction.  And

finally, Defendant argues that the final two elements are satisfied because the parties and the claims are exactly the same between the two cases.

Alternatively, Defendant requests that Plaintiff provide a more definite statement because Plaintiff's complaint is hopelessly vague and ambiguous. Defendant claims that the complaint, as presented, fails to provide sufficient facts supporting Plaintiff's claim and that Defendant cannot prepare an adequate response. Because the complaint fails to make clear how Defendant "improperly denied maintenance and cure benefits" when there was already a trial on these allegations, Defendant concludes that it is unable to determine even the most basic theory of liability that supports Plaintiff's claim.

### A.    *General Principles of Maintenance and Cure*

Before we determine whether Plaintiff's complaint is barred under *res judicata*, we must consider the principles underlying a maintenance and cure claim. "Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (citing *McCorpen v. Cent. Gulf S. S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)). To put it simply, "[m]aintenance is a daily stipend for living expenses," whereas "cure is the payment of medical expenses." *Lodrigue v. Delta Towing, L.L.C.*, 2003 WL 22999425, at *6 n.51 (E.D. La. Dec. 19, 2003) (citing *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995), *abrogated on other grounds by Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 425 (2009)). "The right to maintenance

and cure springs from the seaman's dependence on his ship, and does not turn on fault of the shipowner or the seaworthiness of the vessel." *Costa Crociere, S.p.A. v. Rose*, 939 F. Supp. 1538, 1548 (S.D. Fla. 1996) (citing cases).

### B.   *Whether Plaintiff May File a Successive Claim*

Having established the general principles of maintenance and cure, the questioned presented is whether a plaintiff may file a successive claim seeking the same relief notwithstanding the doctrine of *res judicata*.   Defendant argues that Plaintiff's claim is exactly the same as the prior case because the Court already determined during the last trial that Plaintiff had reached her MMI.   Defendant reasons that its maintenance and cure obligations ended when that determination was made and that Plaintiff is attempting to present a renewed claim under the guise of the previous one.

Plaintiff argues, in her opposition, that Defendant is incorrect on both the facts and the law.   Plaintiff states that she has a right to bring successive lawsuits for maintenance and cure, and that her complaints are not the same because – although the Court concluded that she had reached her MMI during the last trial – a renewed claim may survive for conditions that arise at a later date.   Defendant takes issue with this contention because, after a seaman reaches his or her MMI, there is no duty on the part of a shipowner to provide a seaman with lifelong care.   Thus, once a physician renders a declaration that a seaman has reached her MMI, there is no further duty on the part of a shipowner to prevent the seaman's medical condition from backsliding or to assist the seaman in reaching MMI again.   *See, e.g.,*

*Muruaga v. United States*, 172 F.2d 318, 321 (2d Cir. 1949) ("[W]hen maintenance and cure has brought about all the improvement to be expected in an incurable disease the shipowner's liability ends and thereafter the health of the seaman is at his own risk so far as the shipowner is concerned.  If the seaman thereafter needs attention to maintain his improvement at the maximum, to assist him in recovery from relapses, or to restrain the progress of the disease, the shipowner is not bound to provide that.") (citing *Farrell v. United States*, 167 F.2d 781, 782 (2d Cir. 1948)).[6]

While the parties disagree on whether a plaintiff can file a successive claim for maintenance and cure, they do agree on the procedural history of the case.  They both agree, for example, that the parties litigated Plaintiff's maintenance and cure claim in 2016 and that Plaintiff was considered to be at MMI at the time of her last trial.  [D.E. 11] ("The plaintiff does not generally dispute the defendant's summary of Ms. Jackson's prior claim.").  The parties also agree that at least three elements of *res judicata* have been met.  That is, the parties agree that there has been a final judgment on the merits, that a court of competence jurisdiction rendered a decision, and that the parties are the same in this case as they were in the prior action.  The only element in dispute is the final element as to whether Plaintiff has presented the same cause of action.  And even if Plaintiff has presented a different cause of action, Defendant maintains that Plaintiff's complaint must still be dismissed because a seaman has no right to collect maintenance and cure after MMI has

---

[6]   When taken to its logical conclusion, Defendant is concerned that Plaintiff could go fifty years without ever needing medical treatment and then turn to Defendant for payments if her medical condition deteriorates all those decades later after being declared at MMI.  Defendant reiterates that it has no such obligation under general maritime law.

already been achieved.   Thus, Defendant's motion contains, in some respects, a broader argument than just *res judicata*; it also takes the position that Plaintiff's complaint fails to state a claim because a maintenance and cure claim is not actionable after a seaman reaches his or her MMI.

As a general principle, Plaintiff is correct that "[t]he right to maintenance and cure is ongoing and serial suits may be brought to collect maintenance and cure payments as they come due." *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003) (citing *Pelotto,* 604 F.2d at 398).   This does not mean, however, that claim preclusion does not apply in admiralty proceedings or to maintenance and cure claims.   *See id.* ("[C]laim preclusion still applies to admiralty proceedings, including claims for maintenance and cure.") (citing *Pelotto,* 604 F.2d at 401).

The Fifth Circuit's decision in *Pelotto* is instructive on this point.   There, the plaintiff brought an admiralty action but did not plead a claim for maintenance and cure because the defendants agreed to make payments for a certain period of time.   The plaintiff therefore pursued his other claims for Jones Act negligence and unseaworthiness against the defendants and ultimately prevailed.   When the defendants stopped making payments, the plaintiff then brought a second action with a maintenance and cure claim.

The district court granted summary judgment in favor of the defendant on the grounds of *res judicata* or claim preclusion.  *Pelotto,* 604 F.2d at 401.  The Fifth Circuit reversed the district court because the plaintiff's failure to present his maintenance and cure in his initial suit did not bar the plaintiff's later action for

maintenance and cure. *Id.* at 402. The court explained that – even if the plaintiff had brought his maintenance and cure claim in the initial suit – that would be no bar to bringing the maintenance and cure claim in the later suit because no *determination* had ever been entered that the defendants were not required to pay maintenance and cure in the first instance. *Id.* at 401–02. If, however, the plaintiff had claimed maintenance and cure in his initial suit and an "identifiable finding" had been made fixing the maximum cure, *res judicata* or claim preclusion would have barred the plaintiff's subsequent claim that was outside of the fixed maximum cure. *Id.* at 402 n.12. A logical conclusion from *Pelotto,* that the Fifth Circuit recognized in a later case, "is that, if a finding has been made that the plaintiff is not due maintenance and cure, then claim preclusion would bar all subsequent claims for maintenance and cure." *Brooks*, 336 F.3d at 363.

The same reasoning applies in this case – at least with respect to Plaintiff's maintenance claim – because, in the prior case, the district court entered judgment in favor of Defendant on Plaintiff's Jones Act negligence, unseaworthiness, and maintenance claims. [D.E. 9-1 at 42] ("Defendant NCL is entitled to judgment on all of Jackson's other claims, Jones Act negligence and cure in relation to her right, left knee, right shoulder, and left ankle."). The only judgment in favor of Plaintiff was on a cure claim related to a 2015 back surgery. *Id.* ("Dorothy Jackson is entitled to judgment on her claim on cure in an amount up to NCL's network rate in relation to her December 30, 2015 back surgery."); *see also Jackson v. NCL Am., LLC,* 730 F. App'x 786, 788 (11th Cir. 2018) ("After a bench trial, the district court

entered judgment in favor of Jackson on the cure claim, although it limited her recovery to the rate that Norwegian would have paid for her back surgery had a physician in its network performed the surgery. It ruled in favor of Norwegian on the remaining three claims."). Thus, a finding has already been made that Plaintiff is *not* entitled to maintenance payments – meaning she cannot present a successive claim seeking the same relief. *See, e.g., Brooks*, 336 F.3d at 363 ("[B]ecause a plaintiff must be entitled to maintenance and cure before any recovery can be obtained, the district court correctly dismissed Brooks's second maintenance and cure suit. To hold otherwise, would result in claim preclusion never applying to maintenance and cure claims."). Therefore, to the extent Plaintiff seeks the same relief for maintenance, Defendant's motion to dismiss should be **GRANTED**.

The next question is whether Plaintiff's demand for cure should be dismissed. In an attempt to sidestep *res judicata*, Plaintiff argues in her response that she seeks relief for conditions *subsequent* to 2016 and that her claim is *different* than the prior case, but Plaintiff's allegations are not made clear in her complaint. Plaintiff instead clarifies her allegations in her response to Defendant's motion to dismiss. Plaintiff may not, however, amend her complaint in response to a motion to dismiss. Indeed, the Eleventh Circuit has "repeatedly . . . held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)); *see also Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though,

cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). As the complaint stands now, it presents the same claim that the Court considered last time and there is no allegation that differentiates this case from the previous one. Therefore, Defendant's motion to dismiss Plaintiff's cure claim should be **GRANTED** because Defendant has established each element under *res judicata*.

### C.   *Whether an Amended Complaint Should be Permitted*

Plaintiff can, of course, remedy this defect in an amended complaint to make clear that the relief she seeks is different. But, Defendant suggests that no amendment should be allowed because, even with revised allegations that differentiate Plaintiff's cure claim from the one presented in 2016, Plaintiff cannot prevail. Defendant argues that Plaintiff's own physician declared her at MMI on June 8, 2016 and that this forever terminated Defendant's maintenance and cure obligations. [D.E. 9-1 at 23] ("Dr. Butler subsequently signed a maximum medical improvement form for Jackson's left knee, right knee, and lumbar spine on June 8, 2016.").

Plaintiff does not dispute that the underlying record shows that she achieved MMI in 2016. She suggests that this finding is immaterial because – regardless of whether she previously achieved MMI – "[a] seaman may bring a renewed claim for maintenance and cure even if thought to have reached maximum medical improvement if the medical condition changes so that further treatment would

improve the claimant's condition." *Semien v. Parker Drilling Offshore USA LLC*, 179 F. Supp. 3d 687, 697 (W.D. La. 2016) (citing *Morales v. Garijak*, 829 F.2d 1355 (5th Cir. 1987); *Johnson v. Marlin Drilling Co.*, 893 F.2d 77 (5th Cir. 1990)).

As support, Plaintiff relies primarily on the Fifth Circuit's decision in *Pelotto*, where the court determined that a seaman always has the right to bring serial suits to collect maintenance payments as they come due:

> The rule of Res judicata (and collateral estoppel), recognizable in admiralty, is subject to the substantive limitation that seamen have always been accorded the right to bring serial suits to collect maintenance payments as they come due. Hence, even had Pelotto claimed maintenance and cure in his initial suit, there would still be no bar to recovery of maintenance and cure in this, the "subsequent" action. Since an actual claim would not bar this action, neither can Pelotto's previous failure to make a claim bar this action.

*Pelotto*, 604 F.2d at 402 (5th Cir. 1979).

The problem with Plaintiff's reliance on *Pelotto* is that the Fifth Circuit contemplated a plaintiff filing successive suits to collect on maintenance and cure payments *as they come due*. Yet, in this case, the district court determined that Defendant met its cure obligations for Plaintiff's knee and shoulder surgeries:

> NCL has also presented sufficient evidence to demonstrate that it has already satisfied its cure obligations, i.e., it has paid cure up to the amount that NCL reimburses through its network rate with regard to the knee and shoulder treatment. [T]he court finds that NCL has satisfied its cure obligation as to – by providing reimbursements up to its network rate for the costs of the two right knee arthroscopic surgeries performed [in] October 2013 and May 2015; the left knee arthroscopy preformed October 2013 and the first right shoulder arthroscopy performed May 2015.

[D.E. 9-1 at 39-40]. The only remaining obligation for cure was Plaintiff's back surgery. But, even as to Plaintiff's back, the court found that Defendant's obligation

was "limited" because "Dr. Butler . . . already certified that Jackson's back has reached maximum medical improvement." *Id*. at 38.  Indeed, the court determined that Plaintiff was only "entitled to judgment on her claim on cure in an amount up to [Defendant's] network rate in relation to her December 30, 2015 back surgery." *Id*. at 42.  Given that Defendant met that obligation after the last case concluded, it is unclear how *Pelotto* is helpful to Plaintiff's position because there are no payments left outstanding with respect to her back surgery.

Plaintiff then relies on Judge Marcus's opinion in *Costa Crociere, S.p.A. v. Rose*, where he addressed the question of whether the duty of maintenance and cure extends to a situation where a seaman has a disease that is incurable under certain circumstances.  There, a seaman was employed working aboard a vessel when he suddenly became ill and was transferred off the vessel for medical care.  *See Costa Crociere, S.p.A.*, 939 F. Supp. at 1540.  He had been previously diagnosed with an incurable kidney disease that could result in total loss of renal function.  *Id*.  The disease was progressive and without dialysis or a kidney transplant, the patient would have experienced total renal failure and would have died within a matter of weeks.  *Id*. at 1541.

The seaman began receiving dialysis treatment and one of the testifying experts noted that a patient could live on dialysis for ten to twenty years.  *Id*.  The seaman was also eligible for a kidney transplant, which promised "objectively verifiable improvement over a similarly situated patient on chronic dialysis," but could not cure the disease.  *Id*.  The shipowner had provided full maintenance and

cure since the seaman was removed from the vessel, but filed a lawsuit for a declaration as to its obligation. *Id.* at 1545.

Judge Marcus rejected the argument that there must be a definite and absolute end point for maintenance and cure. *Id.* at 1556 ("Plaintiffs' suggestion that there must be a definite and absolute end point for maintenance and cure awards is not well-founded."). The court found that it has long been "recognized that a seaman deemed to be at the point of maximum improvement because medical science cannot now produce a betterment of his condition is entitled to seek the resumption of benefits *if, at some point in the future, a treatment for his condition is discovered.*" *Id.* at 1557 (emphasis added) (citing *Farrell,* 336 U.S. at 519 (noting that the shipowner "does not contend that if [the seaman] receives future treatment of a curative nature he may not recover in a new proceeding the amount expended for such treatment and for maintenance while receiving it"); Gilmore and Black, *The Law of Admiralty,* (2nd ed. 1975), at 300 (noting that "[t]he shipowner's liability . . . appears to be unlimited in time and can be revived, with respect to an apparently hopeless case, by [advances in medical knowledge] which make a resumption in treatment advisable")). That is, the court found that a "shipowner's obligation may continue for the life of [a] seaman." *Id.* at 1557. And this duty may continue irrespective of the financial burden or the length of time that is needed to better a seaman's condition. *Id.* at 1556 (citing *In Re Sea Ray Marine Servs., Inc.,* 105 B.R. 12, 13 (Bankr. E.D. La. 1989) (holding that maintenance and cure must be provided even during the pendency of the shipowner's bankruptcy proceeding); *Sobosle v.*

*United States Steel Co.,* 151 F. Supp. 767, 769 (W.D. Pa. 1957) (suggesting that "maintenance and cure must continue until every approach reasonably known to medical science is applied in an effort to cure the seaman")).

While this case is, in some respects, helpful to Plaintiff's argument that her cure claim can theoretically be revived at a later date and allow her to file a successive lawsuit, she has not alleged that in this case.  That is, Plaintiff has not presented an allegation that there is an available treatment that can cure her medical condition and that presents a different claim than the one she presented last time.  She merely claims that Defendant has an obligation to continue payments for maintenance and cure.  But, without an allegation that there is any new treatment of a curative nature available for her back condition, it is unclear how she is at any other status other than the one she was at during the conclusion of the prior case (i.e. MMI).  Defendant's motion to dismiss should therefore be **GRANTED** for this additional reason because "where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum care[.]"  *Pelotto*, 604 F.2d at 400.  To the extent Plaintiff can amend her complaint and allege in good faith that her cure claim falls within this exception, Plaintiff should be allowed to file an amended complaint.[7]

---

[7]     For the reasons already stated, we need not reach Defendant's motion for a more definite statement.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** without prejudice.   [D.E. 9].   Any amended complaint should be filed within fourteen (14) days from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 14th day of May, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge