UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-CV-25115-WILLIAMS/TORRES

DOROTHY JACKSON,

    Plaintiff,

v.

NCL America, LLC,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on NCL America, LLC's ("NCL") motion for summary judgment against Dorothy Jackson ("Jackson"). [D.E. 60]. Jackson responded to NCL's motion on August 29, 2021. [D.E. 62]. NCL replied on September 7, 2021. [D.E. 64]. Therefore, NCL's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, NCL's motion for summary judgment should be **GRANTED**.[1]

### I.    BACKGROUND

On November 16, 2012, Jackson, a seaman employed aboard an NCL cruise ship, slipped on an onion peel as she walked along one of the ship's corridors. *Jackson*

---

[1] On August 18, 2021, the Honorable Kathleen Williams referred this motion to the undersigned Magistrate Judge for a Report and Recommendation. [D.E. 61].

*v. NCL America, LLC*, 730 F. App'x 786, 787 (11th Cir. 2018). Accordingly, Jackson fell and sustained multiple injuries. *Id*. From 2013 to 2016, Jackson underwent two right knee surgeries, a left knee surgery, a right shoulder surgery, and a back surgery. *Id*. All of the surgeries were performed by a Jackson's chosen physician – Dr. James C. Butler – who was not within NCL's network. *Id*. In response, NCL reimbursed Jackson for the three knee surgeries and the shoulder surgery, as well as for her office visits and physical therapy. *Id*. NCL refused to reimburse Jackson for the back surgery, claiming that Jackson had failed to disclose previous back pain during her application process and, therefore, NCL was not obligated to pay for a surgery that was related to an undisclosed preexisting condition. *Id*. at 787-788.

Jackson sued NCL, asserting claims of Jones Act negligence, unseaworthiness, maintenance, and cure. *Id*. at 788. On June 8, 2016, prior to a bench trial before Judge Williams on Jackson's claims, Dr. Butler signed a "maximum medical improvement" form for Jackson's left knee, right knee, and lumbar spine, attesting to the fact that Jackson had reached a point where her condition was either "incurable" or "where further treatment will result in no further betterment of [her] condition." [D.E. 9-1 at 23]; *see also* [D.E. 59-1 at 14-15] (further defining maximum medical improvement, as understood by Dr. Butler at the time, as the point at which further treatment will "merely relieve pain and suffering but not otherwise improve the patient's physical condition[.]"). The parties do not dispute that, in light of Dr. Butler's attestation, Judge Williams determined that Jackson reached maximum medical improvement in 2016 with regard to her back injury.

2

Following the bench trial in Jackson's first case, Judge Williams entered judgment in favor of Jackson on the cure claim, although it limited her recovery to the rate that NCL would have paid for her back surgery had a physician in its network performed the surgery. *Jackson*, 730 F. App'x at 788. Judge Williams ruled in favor of NCL on the remaining three claims. *Id*. The Eleventh Circuit affirmed. *Id*. at 792. And it is undisputed that NCL subsequently paid the amount owed to Jackson for the cure of her back injury. [D.E. 39, ¶ 12].

But that is not where this story ends because Jackson continued to receive treatment from Dr. Butler relating to the condition of her back, which "deteriorated" after Dr. Butler's maximum medical improvement declaration in 2016. [D.E. 59-1 at 48-50]. Accordingly, since 2016, Dr. Butler has performed multiple back surgeries to improve Jackson's condition and help her reach the point of maximum medical improvement a "second time." *See id*. Therefore, Jackson filed suit against NCL again, essentially seeking compensation relating to these subsequent back surgeries under the doctrine of maintenance and cure. [D.E. 39 at 7-8]. It is this second case that is currently pending before the Court.

In response, NCL disclaims liability for the back surgeries that were performed on Jackson after Judge Williams' maximum medical improvement determination in 2016, arguing that such liability is inconsistent with the doctrine of maintenance and cure. [D.E. 60 at 1-3]. Accordingly, NCL has moved for summary judgment against Jackson. *Id*.

## II. APPLICABLE PRINCIPLES AND LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v.*

4

*Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. ANALYSIS

NCL moves for summary judgment on the basis that a shipowner's obligation to pay for its seaman's cure extends *until* the seaman has reached maximum medical improvement ("MMI").[2] Because Judge Williams determined in 2016 that Jackson's back injury reached MMI (and because NCL satisfied its obligations with respect to the cure of Jackson's back injury pursuant to Judge Williams' order), NCL argues

---

[2] MMI is "achieved when it appears probable that further treatment will result in no Betterment of the seaman's condition." *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979). "Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Id*.

that its cure obligation has been discharged. For the reasons discussed below, this Court agrees with NCL and finds that the doctrine of maintenance and cure does not require NCL to pay for Jackson's back injury to reach MMI again.

### A.     *The Doctrine of Maintenance and Cure.*

The general maritime law doctrine of maintenance and cure is of ancient origin. *Costa Crociere, S.p.A. v. Rose*, 939 F. Supp. 1538, 1547 (S.D. Fla. 1996) (Marcus, J.) (discussing how the doctrine originated with the Laws of Oleron and other medieval sea codes to provide special protection to seamen who were injured or fell ill while in the service of their ship). In particular:

> *Maintenance* is a per diem subsistence allowance designed to provide the seaman with compensation sufficient to cover his food and lodging until the time of maximum medical improvement. It is intended to encompass the reasonable cost of food and lodging comparable to that received aboard the vessel. *Cure* represents the cost of medical and nursing care during the seaman's affliction, again until the point of maximum improvement.

*Id.* at 1548 (citing *Nichols v. Barwick*, 792 F.2d 1520, 1522-24 (11th Cir. 1986)) (emphasis added). The right to maintenance and cure "springs from the seaman's dependence on his ship"; it does not turn on the fault of the shipowner or the seaworthiness of the vessel and is, therefore, akin to strict liability. *See id.* (citing *Nichols*, 792 F.2d at 1522-24). Moreover, the cause of the injury or ailment is irrelevant, "so long as it manifests itself while the seaman is in the service of his vessel." *Id.* (citing *Baker v. Ocean Systems, Inc.*, 454 F.2d 379, 383 (5th Cir. 1972)).[3]

---

[3]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Accordingly, the burden of proving the right to maintenance and cure rests with the seaman. *Id.* (citing *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 404 (5th Cir. 1979)). "Once the seaman establishes his right to maintenance and cure, the burden of persuasion shifts to the shipowner to prove that the seaman has reached the point of maximum medical improvement." *Id.*

Although NCL does not deny Jackson's general right to maintenance and cure, it argues that its cure obligations have already been discharged because (1) Judge Williams determined that Jackson's back injury reached MMI in 2016 and (2) NCL, pursuant to Judge Williams' order, paid for that cure. *See, e.g., Muruaga v. United States*, 172 F.2d 318, 321 (2d Cir. 1949) ("[W]hen maintenance and cure has brought about all the improvement to be expected in an incurable disease the shipowner's liability ends and thereafter the health of the seaman is at his own risk so far as the shipowner is concerned. If the seaman thereafter needs attention to maintain his improvement at the maximum, to assist him in recovery from relapses, or to restrain the progress of the disease, the shipowner is not bound to provide that.").

The Court agrees that, as a general rule, the law clearly requires the shipowner to pay for an entitled seaman's cure until it is determined that the seaman has reached MMI. *See Farrell v. United States*, 336 U.S. 511, 514-19 (1949) (discussing the shipowner's duty of maintenance and cure); *Nichols*, 792 F.2d at 1523-24 (defining the shipowner's cure obligation as the "payment of therapeutic, medical, and hospital expenses . . . until the point of 'maximum cure.'"); *Pelotto*, 604 F.2d at 400 (same); *Muruaga*, 172 F.2d at 321 ("[liability for maintenance and cure] is discharged when

7

the shipowner has provided maintenance and cure, or its equivalent in money, up to the time when the seaman has recovered from his disability to the extent it is reasonable to believe recovery under treatment is possible."); *Hurtado v. Balerno Int'l Ltd*, 408 F. Supp. 3d 1315, 1329 (S.D. Fla. 2019) ("[a] shipowner's obligation to pay maintenance and cure continues until the seaman has reached maximum cure."); *Rose*, 939 F. Supp. at 1548 ("[c]ure represents the cost of medical and nursing care during the seaman's affliction . . . until the point of maximum improvement."). Were this the end of the inquiry, it would be obvious that NCL is not liable for the cure associated with Jackson's post-2016 back surgeries because Judge Williams determined, based upon the declaration of Dr. Butler, that Jackson's back injury reached MMI in 2016. But, like so many general rules, there are exceptions that necessitate further discussion.

### B.      *The* Rose *Exception for Post-MMI Maintenance and Cure Claims.*

Both parties rely to a great extent on Judge Marcus's district court decision in *Rose* as the rule of decision to apply. In *Rose*, the plaintiffs sought a declaration that one of their seamen had reached the point of maximum medical improvement and, accordingly, that the plaintiffs had no continuing obligation to provide the seaman with maintenance and cure. *Rose*, 939 F. Supp. at 1539. The seaman suffered from a kidney ailment that would kill him in a matter of weeks unless he was treated periodically with dialysis or given a kidney transplant. *Id.* at 1552. Accordingly, to avoid funding the seaman's dialysis treatment indefinitely or otherwise paying for his kidney transplant, the plaintiffs posited that the seaman reached MMI when he

was first stabilized on dialysis. *Id*. at 1548. The seaman responded that he had not yet reached MMI because continued dialysis or a kidney transplant created a reasonable prospect for the betterment of his condition. *Id*. The court agreed with the seaman, holding that the plaintiffs' maintenance and cure obligations were not yet discharged because the seaman had not yet reached MMI. *Id*. at 1558-59.

Finding the plaintiffs' suggestion that there must be a "definite and absolute" endpoint for a shipowner's maintenance and cure obligations to be "not well-founded," the court elaborated upon how a shipowner may be liable for providing maintenance and cure to a seaman long after it is determined that the seaman's injury or ailment reached MMI:

> Courts have long recognized that a seaman deemed to be at the point of maximum improvement because medical science cannot now produce a betterment of his condition is entitled to seek the resumption of benefits if, at some point in the future, a treatment for his condition is discovered.

*Id*. at 1556-57 (citing *Farrell*, 336 U.S. at 519).

Accepting Plaintiff's invitation for the moment to treat this *dicta* as settled law, and even though we agree that NCL has previously discharged its cure obligations with respect to Jackson's back injury, this principle makes it possible for Jackson to legitimately deserve additional cure payments from NCL. But, under *Rose*, this possibility is contingent upon the finding that her post-MMI treatment is *both* the result of a new advancement in medical science and curative in nature. *See id*. That contingency has not been established in this record.

9

### C.     *Defendant has Met its Maintenance and Cure Obligations.*

Despite the avenue for relief under *Rose*, nothing in the record indicates that the post-MMI treatments received by Jackson (i.e., her post-2016 back surgeries) represented an advancement in medical science that was not available to her at the time of her MMI-determination in 2016. In fact, the record shows just the opposite because Dr. Butler testified at his deposition that the post-2016 surgical procedures performed on Jackson have been around since the 1980s. [D.E. 59-1 at 10-13]. So, while neither party disputes that the post-2016 back surgeries were curative in nature, the fact that these treatments were known to medical science before Jackson's MMI-determination removes her claims from the ambit of the *Rose* exception. *See Rose*, 939 F. Supp at 1556-57. NCL has previously discharged its cure obligations, and nothing in the record proves that NCL should be required to pay for additional cure at this time.

Jackson disagrees with this conclusion. She argues that it constitutes a fundamental misreading of *Rose* to interpret the word "discovered" as "invented." In her view, the facts of *Rose* belie that interpretation because the treatments available to the seaman in *Rose* – dialysis or kidney transplant – were discovered long before the seaman became ill. Accordingly, she argues that post-MMI treatments need not be the product of post-MMI medical advancements to qualify for additional cure payments. But it is Jackson who misreads *Rose*. Aside from the fact that Judge Marcus used remarkably clear language when he acknowledged that a resumption of maintenance and cure benefits could be required upon a post-MMI discovery in

medical science, *Rose* did not involve a seaman who had previously been determined to have reached MMI. *See Rose*, 939 F. Supp. at 1556-57. In fact, the case held just the opposite. *See id.* at 1557-59. So, the facts of *Rose* do not belie the obvious interpretation of the exception that it envisioned in *dicta* for post-MMI advancements in medical science.

Jackson also argues that, notwithstanding the well-established rule that an MMI-determination marks the endpoint for a shipowner's maintenance and cure obligations, the law provides her with the right to bring serial suits to collect maintenance and cure payments "as they come due." *See Pelotto*, 604 F.2d at 401. But none of the cases cited by Jackson for the proposition that she is entitled to bring serial suits for maintenance and cure involve a situation where the seaman was previously determined by a court to have reached MMI. *See Farrell*, 336 U.S. at 518-19; *Pelotto*, 604 F.2d at 400-02; *Morales v. Garijak*, 892 F.2d 1355, 1360 (5th Cir. 1987); *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 78-80 (5th Cir. 1990); *Rose*, 939 F. Supp. at 1556-57; *Semien v. Parker Drilling Offshore USA LLC*, 179 F. Supp. 3d 687, 714-17 (W.D. La. 2016); *Sobosle v. United States Steel Co.*, 151 F. Supp 767, 769 (W.D. Pa. 1957).

In fact, one of the primary cases that she relies upon for this contention *expressly* acknowledged that a seaman's entitlement to bring serial suits for maintenance and cure "would be different if an identifiable finding had been made fixing the time of maximum recovery." *See Pelotto*, 604 F.2d at 402 n. 12. And a logical conclusion from *Pelotto*, that the Fifth Circuit recognized in a later case, "is that, if a

11

finding has been made that the plaintiff is not due maintenance and cure, then claim preclusion would bar all subsequent claims for maintenance and cure." *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 363 (5th Cir. 2003).

Here, Judge Williams determined that Jackson's back injury reached MMI in 2016 and, accordingly, ordered NCL to pay for that cure. Nothing in the record undermines that determination, and the parties do not dispute the fact that NCL paid Jackson as ordered. Thus, because a court has already fixed the time of Jackson's maximum recovery, Jackson is not entitled under *Pelotto* to bring serial suits for maintenance and cure relating to her post-2016 back surgeries.

A further illustration of this point is found in *Semien*, another case relied upon by Jackson for her serial-suit argument, where one of the medical experts who testified at the seaman's bench trial declared that the seaman had previously reached MMI with regard to his knee injury. *See Semien*, 179 F. Supp. 3d at 714-717. A different medical expert disputed this finding and believed that additional diagnostic testing was required before such an MMI-determination could be made. *See id.* In light of this factual conflict, the court in *Semien* refrained from making an MMI-determination and ordered additional diagnostic testing, which it required the shipowner to pay for as part of its cure obligation. *Id.* at 717.

By contrast, there is no issue of fact that NCL discharged the cure obligation it owed to Jackson when it paid her, in accordance with Judge Williams' order, for the cure that resulted in her back injury's MMI-determination. Absent evidence that undermines Judge Williams' MMI-determination with respect to Jackson's back

12

injury, which evidence has not been presented (e.g., a recent advancement in medical science that allows for a previously unavailable improvement of Jackson's condition), this Court cannot renew NCL's cure obligation simply because Jackson underwent further post-MMI treatment. *See Rose,* 939 F. Supp. at 1556-57. Nothing in this record suggests that Judge Williams' MMI-determination has been undermined; rather, the record reflects that Jackson's condition deteriorated after 2016 and the subsequent back surgeries were performed to help her reach MMI for the second time. Under long established federal admiralty law, NCL is not liable for this second cure. *See, e.g., Muruaga,* 172 F.2d at 321 ("[W]hen maintenance and cure has brought about all the improvement to be expected in an incurable disease the shipowner's liability ends and thereafter the health of the seaman is at his own risk so far as the shipowner is concerned. If the seaman thereafter needs attention to maintain his improvement at the maximum, to assist him in recovery from relapses, or to restrain the progress of the disease, the shipowner is not bound to provide that.").

### IV. CONCLUSION

For the foregoing reasons, NCL's motion for summary judgment [D.E. 60] should be **GRANTED**. Final Judgment should be entered in favor of Defendant, against Plaintiff, and the action should be Closed.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual

or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of December, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge